**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**RAYFORD GRAVES**                                                                                          **PLAINTIFF**

**versus**                                                              **CIVIL ACTION NO. 2:07cv306-KS-MTP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**                                                               **DEFENDANT**

REPORT AND RECOMMENDATION

Plaintiff Rayford Graves ("Graves" or "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) requesting judicial review of a final decision of the Commissioner denying his claim for disability benefits. The matter is now before the Court on the Defendant's Motion to Affirm the Decision of the Commissioner [15] and on Plaintiff's Motion for Judgment on the Pleadings [11]. Having considered the pleadings, the transcript of the record, and applicable law, and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be affirmed.

**Procedural History**

On December 12, 2005, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income benefits ("SSI") under both Title II and Title XVI of the Social Security Act. The claim was denied initially and upon reconsideration.

On November 28, 2006, a hearing requested by Plaintiff was convened before Administrative Law Judge ("ALJ") Wallace E. Weakley. (Tr. 25-58.) Plaintiff, who was represented at the hearing, appeared and testified, as did a vocational expert ("VE"). (Tr. 25.) Employing the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f),[1] on January 24, 2007, the

---

[1] The five steps focus on:
    1) whether the claimant is engaged in substantial gainful activity,
    2) whether the claimant has a severe impairment,

ALJ rendered his decision that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 14-23.)  Thereafter, Plaintiff requested review by the Appeals Council on February 16, 2007. (Tr. 13.)  The Appeals Council found no basis for changing the decision of the ALJ and denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 4-7.)

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff filed a Complaint [1] in this Court on November 16, 2007, seeking an order awarding disability benefits.  The parties having filed dispositive motions, the matter is now ripe for decision.

**Medical/Factual History**

Plaintiff was forty years old at the time of his disability.  (Tr. 55.)  He testified that he has attended special education classes, that he completed the twelfth grade  (Tr. 37, 119) and that he undertook special job training as an auto mechanic.  (Tr. 119) He testified that he has past work experience as an oil field driller, a construction worker, and a mechanic. (Tr. 39-40, 114-15)

Plaintiff's relevant medical history as set forth in the record begins during the three-year period between January 23, 2004 and December 6, 2006 when Plaintiff was treated for various medical problems, including chronic generalized pain causing sleep difficulties, chronic fatigue, and daily morning stiffness and depression.  (Tr. 146-205)

In April and May 2004, Plaintiff sought treatment at the Hattiesburg Clinic for pain and locking in his knees, but X-rays and an MRI were essentially normal. (Tr. 191-95) In March, 2005, Plaintiff received a Cortisone injection to treat foot pain.  (Tr. 161-62)  Plaintiff also received

---

3) whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R.  Part 404, Subpart P, Appendix 1;
4) whether the claimant can return to prior relevant work, and
5) whether there is any work that exists in significant numbers in the national economy that the claimant can perform.

2

orthotic casting and a valgus wedge as a part of this treatment. (Tr. 161-62)

By August, 2005, Plaintiff was being treated by rheumatologist Dr. James Pennebaker, MD at the Hattiesburg Clinic. (Tr. 149) Plaintiff was seeking treatment for widespread articular discomfort and wrist pain upon activities. (Tr. 149) Plaintiff also reported lower back pain due to degenerative arthritis. (Tr. 149) Plaintiff's depression medication was ineffective at this time, and Dr. Pennebaker prescribed Effexor. (Tr. 149) While receiving this treatment, Plaintiff was still working as an oil field driller. (Tr. 150)

On September 14, 2005, Plaintiff underwent an MRI on his left knee. (Tr. 148) Apart from a small joint effusion and a degenerative signal in the menisci, the MRI showed nothing out of the ordinary. (Tr. 148) Treatment notes from the Hattiesburg Clinic, dated September 27, 2005, indicate that Plaintiff was experiencing bilateral knee pain on active range of motion. (Tr. 147) He was treated with Xylocaine injections. (Tr. 147)

On November 16, 2005, Plaintiff saw Dr. Victoria Fernando, MD in Covington County Hospital after experiencing high blood pressure. (Tr. 208) Dr. Fernando reduced Plaintiff's narcotic medication at his request. (Tr. 208)

On December 6, 2005, Plaintiff reported increased pain to Dr. Pennebaker at the Hattiesburg Clinic, who indicated in his notes that Plaintiff's pain registered "eight" on a ten-point visual analog scale and that the pain was most pronounced in Plaintiff's lumbar spine and hips. (Tr. 146) Plaintiff was at this time taking Percocet, Lyrica, and Duragesic patches for pain, Effexor for depression, and Soma for muscle spasms. (Tr. 146) It was during the month of December that Plaintiff ceased working and filed his Title II and Title XVI applications. (Tr. 91-98)

In March 2006, Dr. Pennebaker diagnosed Plaintiff with fibromyalgia, noting that Plaintiff's feet and hips were the focal points of his pain. (Tr. 276) Dr. Pennebaker continued to prescribe

Lortab and Percocet. (Tr. 276) Dr. Pennebaker subsequently treated Plaintiff with bilateral tennis elbow injections (Tr. 275) and substituted a prescription for Lyrica for Plaintiff's previous Lortab prescription. (Tr. 274) Plaintiff continued to experience pain, which was made worse by activity, throughout this time. (Tr. 274)

In June 2006, Plaintiff was seen in the Emergency Room at Forrest General Hospital for low back pain and abdominal pain. (Tr. 296-98)

Dr. Pennebaker noted on August 18, 2006 that Plaintiff had undergone detox treatment at Pine Grove for progressive abuse of his opioid therapy. (Tr. 299) At that time, Plaintiff was no longer taking any prescription medications. (Tr. 299)

On March 19, 2006, prior to Disability Determination Services ("DDS")'s initial determination, Dr. Louis Saddler, MD completed a Physical Residual Functional Capacity Assessment. (Tr. 242-49) Dr. Saddler diagnosed Plaintiff with lumbar disc disease and he determined that Plaintiff had the residual functional capacity for light work. (Tr. 242-249)

DDS's initial determination was made on March 21, 2006 by internist Dr. Sylvester McDonnieal, MD, who diagnosed Plaintiff with lumbar disc disease. (Tr. 59-60) Dr. McDonnieal also completed a Psychiatric Review Technique Form for DDS on the same day. (Tr. 250-62) Dr. McDonnieal determined that Plaintiff's depression was not severe and that his "B" criteria were "mild" in all categories.[2] (Tr. 250-60)

The reconsideration determination was made on June 5, 2006 by Dr. Robert Culpepper, MD,

---

[2]Under the "B" criteria, degrees of limitation are assessed for a list of functional limitations. The degrees of limitations are indicated by selecting one of five ratings: "none," "mild," "moderate," "marked," and "extreme." For each of the listed functional limitations ("restriction of activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence, or pace") Dr. McDonnieal selected "mild" as the appropriate degree of Plaintiff's limitations. Dr. McDonnieal also noted that Plaintiff had suffered no episodes of decompensation of extended duration. (Tr. 260)

4

a family practitioner. (Tr. 61-62)  Dr. Culpepper diagnosed Plaintiff with fibromyalgia and lumbar disc disease, and while he determined that Plaintiff was unable to return to past work, he also determined that other work was possible.  (Tr. 74-75)

BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):
>
> > 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> > 2.  An individual who does not have a 'severe impairment' will not be found to be disabled.
> > 3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> > 4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> > 5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).  A finding that a claimant "is disabled or not disabled at any point in the five-step process  is conclusive and terminates the...analysis." *Id.*

**The Administrative Law Judge's (ALJ) Analysis in This Case**

After a hearing and upon considering the testimony and medical records, the ALJ rendered his decision on January 24, 2007.  (Tr. 14-23.)  As to Step One, the ALJ found that Plaintiff had not engaged in performing any substantial gainful work since December 6, 2005.  He next found that

Plaintiff had a number of medical impairments – severe joint pain, back and knee pain, drug detoxification, and fibromyalgia – which were "severe" within the meaning of the Social Security Act. (Tr. 19.)

However, at Step Three, the ALJ found that Plaintiff's impairments were not "listed impairments" or equivalents thereof such that disability would be presumed. (Tr. 20.)  He noted that Plaintiff did little during the day but see his children off to school in the morning and had to take constant breaks while doing chores. (Tr. 20)  He also noted, however, that Plaintiff could stand for up to twenty minutes, could sit for up to twenty minutes before standing up, could drive a car, and could push, pull, and reach overhead. (Tr. 20)  The ALJ further determined that Plaintiff could lift up to ten (10) pounds and pick up change with his fingers.  (Tr. 21)

The ALJ found that Plaintiff's testimony was not credible and not consistent with the evidence.  (Tr. 20)  Specifically, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting factors of his symptoms were not entirely credible.  (Tr. 20)

At Step Four, the ALJ found that Plaintiff was forty years of age at the time of the decision, an age which places Plaintiff in the category of younger individual.  (Tr. 22) The ALJ found that Plaintiff had a high school education and could communicate in English.  (Tr. 22) The ALJ found that Plaintiff had past relevant work as an oil field driller, mechanic, and construction worker, which are very heavy to heavy in exertional demand. (Tr. 22)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform only sedentary work. (Tr. 20)  Consequently, he found that Plaintiff could not perform his past relevant work.  (Tr. 21)

Turning to Step Five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, that there exist a significant number of jobs in the national economy that Plaintiff can perform.  (Tr. 22)  The vocational expert testified that Plaintiff would be able to perform the

requirements of representative occupations such as gate tender (with 1,200 jobs existing in the region and 100,000 jobs existing nationally), dispatcher (with 148 jobs existing in the region and 31,314 jobs existing nationally), and booth cashier (with 1,000 jobs existing regionally and 100,000 jobs existing nationally). (Tr. 23) As the ALJ found that Graves retained the residual functional capacity and capability of adjusting to other work performing jobs existing in significant numbers in the national economy, he found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 23)

## STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames,* 707 F.2d at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.

THE ISSUES

A. The Commissioner argues in his Motion that substantial evidence exists in the record to support the Commissioner's final decision that Plaintiff failed to establish that he was disabled under the meaning of the Act.  This Court finds that substantial evidence exists in the record to support the determination of the ALJ and the decision of the Commissioner, and that Plaintiff has failed to meet his burden of proof.

The ALJ determined on the basis of the medical record in its entirety that Plaintiff has retained an RFC at the sedentary exertional level.  (Tr. 20-22)  This finding was supported by an evaluation of the treating physicians' reports and opinions, the supporting medical findings, and other physicians' reports and opinions, and by a consideration of Plaintiff's testimony.  (*See* Tr. 19-23)  In making his determinations, the ALJ, in accordance with the requirements of the relevant regulations[3], considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence.[4]  (Tr. 20)  In addition, the ALJ also considered opinion evidence.[5] (Tr. 20)

While the burden shifted from  Plaintiff to the Commissioner upon the determination that Plaintiff could not return to past work, the ALJ's finding that Plaintiff could perform other work in the regional and national economies is supported by substantial evidence.  The ALJ determined, on the bases of testimony from the vocational expert and of the Commissioner's Medical-Vocational Guidelines ("Grid Rules") that alternative work for which Plaintiff remained capable existed in

---

[3] 20 CFR § 404.1529 and § 416.929; 20 CFR § 404.1527 and § 416.927.

[4] The ALJ included a review of Plaintiff's symptoms and a history of his treatment with Dr. Pennebaker and his other treating physicians from January, 2004 to August, 2006.  *See* Tr. 20.

[5] The ALJ specifically discussed Dr. Saddler's review of Plaintiff's medical record for DDS.  *See* Tr. 21.

significant numbers in the regional and national economies. (Tr. 22-23) Each of Plaintiff's severe impairments was incorporated into the ALJ's hypothetical questions to the vocational expert during his testimony. (Tr. 55-56)

In addition to applying the five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f),[6] the ALJ also considered the specific factors outlined in Social Security Ruling 96-7p regarding the effects of pain and other symptoms on Plaintiff's ability to work. (Tr. 21) After determining that Plaintiff had the RFC to perform sedentary work, the ALJ went on to consider the additional limitations restricting Plaintiff's ability to perform all of the requirements of that level of work. (Tr. 22-23) The ALJ relied upon the vocational expert's testimony in identifying specific jobs available to Plaintiff and which Plaintiff could perform given his specific limitations. (Tr. 23)

This Court is satisfied that the ALJ's findings are supported by substantial evidence in the record and should be affirmed.

B. Plaintiff argues in his Motion that the ALJ committed an error of law in mis-interpreting the regulations which define a severe medically-determinable impairment. The Court disagrees and finds that the ALJ properly applied the relevant regulations in his Step Two analysis determining which of Plaintiff's impairments were severe for purposes of the five-step sequential procedure outlined in 20 CFR § 404.1520(b)-(f).

Plaintiff does not dispute that the ALJ applied the proper regulations to the facts of his appeal. Plaintiff's true point of contention is with the ALJ's judgment in determining which of the various impairments from which Plaintiff is suffering fit the regulations' requirements for classification as severe impairments. Plaintiff asks this Court to review Plaintiff's medical records and override the determinations made by the ALJ in classifying Plaintiff's impairments not because

---

[6]*See* Tr. 19-23.

the wrong standards were applied, but because Plaintiff disagrees with the ALJ's specific classification of one of his impairments (depression).

A reconsideration of the evidence, however, for the purpose of trying the issue of the severity of Plaintiff's impairments *de novo* - or for the purpose of substituting this Court's judgment for the ALJ's on the issue of the severity of Plaintiff's impairments - is not within the scope of this Court's review. *Harrell*, 862 F.2d at 475. This Court will only consider whether substantial evidence exists in the record to support the ALJ's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis*, 837 F.2d at 1382. The medical records in the record refer to Plaintiff's history of depression (Tr. 171, 208, 294) as well as the medications prescribed to Plaintiff for this condition. (Tr. 171, 188, 276, 299) As Plaintiff acknowledges in the record, however, he had not been treated at a mental health center or by a mental health professional. (Tr. 236) Moreover, as discussed above, Dr. McDonnieal's mental health assessment for DDS stated that Plaintiff's mental disorder did not have more than a mild impact on various aspects of his ability to function. (Tr. 250, 262) The ALJ considered Plaintiff's testimony, the treating physicians' reports and opinions, the supporting medical findings, and other physicians' reports and opinions in making his determinations. See Tr. 19-23. The ALJ applied the relevant regulations[7] properly in reaching his decision.

The transcript of the November 28, 2006 hearing indicates that depression was not among Plaintiff's primary causes for seeking benefits under the Social Security Act. (*See* Tr. 27-57) Early in that hearing, Plaintiff's counsel acknowledged to the ALJ that "[t]his is a pain case obviously." (Tr. 28) As discussed above, the ALJ did not ignore Plaintiff's depression in classifying his impairments; rather, the ALJ considered Plaintiff's depression within the context of the full medical

---

[7]*See* Tr. 18-19.

record and determined that it was not a severe impairment.  (*See* Tr. 19)

This Court is satisfied that there exists in the record more than substantial evidence to support the ALJ's findings excluding Plaintiff's depression from the list of Plaintiff's severe impairments and that the correct legal standards have been applied in this case.

C.  Plaintiff also argues in his Motion that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence.  Plaintiff maintains that because the ALJ erred at Step Two of his analysis in determining that Plaintiff's depression was not a severe impairment, the ALJ subsequently erred at Steps Four and Five in determining Plaintiff's RFC.  Once again, this Court is asked to substitute its judgment for the ALJ's in determining which of Plaintiff's impairments are severe and which are not for purposes of the required five-step analysis.  Such re-weighing of the medical evidence in the record is not within the scope of this Court's review.  *See Hollis*, 837 F.2d at 1382; *Harrell*, 862 F.2d at 475.  As discussed above, this Court finds that the record contains more than substantial evidence to support the ALJ's determinations at each of the five steps in his disability analysis.

Plaintiff calls the ALJ's failure to classify his depression as a severe impairment an error of law, but Plaintiff's true point of contention is with the outcome of the ALJ's application of the relevant regulations to Plaintiff's medical record.  In any case, it is the determination of this Court that the correct legal standards were applied in the ALJ's evaluation of the evidence.

## CONCLUSION/RECOMMENDATIONS

The Court finds that the Commissioner's decision that Plaintiff is not entitled to disability benefits under the Social Security Act is supported by substantial evidence and utilizes correct legal standards.  It is, therefore, the recommendation of this Court that the Commissioner's Motion [15] be granted and the denial of benefits be affirmed.  The undersigned further recommends that

Plaintiff's Motion for Judgment on the Pleadings [11] be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 16th day of June, 2008.

                                                                      s/ Michael T. Parker
                                                                      United States Magistrate Judge